UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

        -v-                                  13-CR-6036(DGL/MWP)

WILLIAM E. MILLER,

        Defendant.

## GOVERNMENT'S RESPONSE TO THE
## DEFENDANT'S OMNIBUS MOTIONS

The United States of America, through its attorney, William J. Hochul, Jr., United States Attorney for the Western District of New York, Marisa J. Miller, Assistant United States Attorney, of counsel, hereby makes and files its response to the pre-trial omnibus motions of the defendant, William E. Miller, filed on June 4, 2013.

## SUPPRESSION OF PHYSICAL EVIDENCE

It is undisputed that on August 9, 2012, officers with the Rochester Police Department ("RPD") responded to 399 Electric Avenue, Rochester, NY after the defendant, William E. Miller, called 911 to report that he had been robbed. When officers arrived at the premises, the defendant directed them to the room that he rented, where officers observed a substantial quantity of untaxed cigarettes. (ECF #28-2, p. 4).[1] Having seen the contraband, the officers applied for a search warrant for the premises, which was issued by

---

[1] In the interest of avoiding unnecessary duplication, the government refers to the search warrants and search warrant applications appended to the defendant's motion by their docket entry number.

the Honorable John E. Elliott, Rochester City Court, in the early morning hours of August 10, 2012. (ECF #28-2, 28-3) (hereinafter "Premises Warrant"). The Premises Warrant authorized the officers to search for and seize, among other items

> [P]hotographs and video tapes that depict individuals involved in untaxed and unstamped cigarette violations and/or photographs to assist in helping to identify traffickers and their associates including undeveloped rolls of film and disposable cameras.

(ECF #28-3, p. 2). Pursuant to the Premises Warrant, the officers located a General Imaging 7.0 megapixel A735 digital camera (with an enclosed LEXAR platinum II 60x 1GB SD card)[2] and, upon turning it on, observed two images of what appeared to be the breasts and vaginal area of a minor female. (ECF #28-4, p. 2). The officers stopped their review of the digital camera and applied for a second search warrant, which Judge Elliott also issued on August 10, 2012. (ECF #28-4, 28-5) (hereinafter "Digital Camera Warrant").

Through his motion, the defendant argues that the officers' initial review of the digital camera constitutes an unreasonable search, in violation of the Fourth Amendment.[3] The defendant claims, without authority, that the officers were prohibited from examining his digital camera as the Premises Warrant particularized "photographs and video tapes" … "including undeveloped rolls of film and disposable cameras." (ECF #28, ¶16). As the officers seized and searched the digital camera in accordance with the parameters of the Premises Warrant, the defendant's motion must be denied.

The Premises Warrant particularized the items to be searched for and seized. In the Second Circuit, "[a] search warrant is sufficiently particular when it enables the executing

---

[2] Both of which will be hereafter referred to collectively as "the digital camera."
[3] As the camera was located within the room that the defendant rented at 399 Electric Avenue and as the defendant does not dispute that he was the owner of the camera, the government does not contest his standing to assert this suppression motion.

2

officers to ascertain and identify with reasonable certainly the items to be seized." *United States v. Lake*, 233 F.Supp.2d 465, 471 (E.D.N.Y. 2002) *citing United States v. George*, 975 F.2d 72, 75 (2d Cir. 1995); *Steele v. United States*, 267 U.S. 498, 503-504 (1925). Moreover, the warrant may use generic terms to describe materials to be seized, so long as the warrant relates the items to specific illegal activities. *George*, 975 F.2d at 76. Then, when the warrant is executed, courts have recognized that "officers executing the warrant must exercise some minimal judgment as to whether" the material fits within the generic categories set forth in the warrant. *See United States v. Riley*, 906 F.2d 841, 845 (2d Cir. 1990) (regarding the execution of search warrants to seize documentary evidence).

In essence, the defendant's motion urges the Court to narrowly define "photograph and video tapes" to include only physical manifestations of those items and exclude any digital material. Such a hypertechnical reading of the warrant defies logic and is unsupported by case law. For example, in *People v. Fraser*, 96 N.Y.2d 318, 327 (2001), the defendant challenged his conviction for possessing a sexual performance by a child, in part, by arguing that a digital computer image is not a photograph within the meaning of New York State law. The Court of Appeals adopted the Appellate Division's holding that "the graphic images stored in defendant's computer were either photographs that were converted to digital images by a scanner or taken by a digital camera." *Id.* The *Fraser* court then affirmed the defendant's conviction, stating "[d]efining digital computer images as photographs falls within the 'plain and natural meaning of the statute.'" *Id.* at 327-328 *quoting People v. Keyes*, 75 N.Y.2d 343, 348 (1990); *see also*, *People v. Garing*, 1 Misc. 3d 904(A) (Co. Court, Suffolk County, 2003) (rejecting argument that images were not found in the home "simply because they were not in the form photographs traditionally took").

The term "photograph" has not been so narrowly parsed in the Second Circuit. *See*, *e.g.*, *United States v. Harding*, 273 F.Supp.2d 411 (S.D.N.Y. 2003). The district court in *Harding*, as part of its analysis of the government's inevitable discovery argument, noted that the government was authorized by the warrant to search for evidence of fraud, including photographs of personal and business travel. *Id.* at 425. The court noted that "photographs may be taken with digital or film cameras. In either case, they may be stored in digital form…" *Id.* In a footnote, the court further explained

> The use of the word "photograph" to describe an image captured with a digital camera or stored in digital form may be a misnomer. "Photography" typically refers to the process of capturing images by "producing a negative or positive image directly or indirectly on a sensitive surface by action of light or other form of radiant energy. Webster's Third New Int'l Dictionary of the English Language Unabridged 1702 (1963). This perhaps excludes what is commonly referred to as digital photography. **But the point is academic. Search warrants must be read in a common sense way**. *See*, *e.g.*, *Steele v. United States*, 267 U.S. 498, 503-504 (1925). This warrant authorized a search for images of personal and business travel, regardless of whether they were made or stored in digital or conventional photographic form.

*Id.* at fn. 73 (emphasis added). The district court ultimately held that the warrant (for "documents, records, and other materials… including photographs") authorized the agents to inspect the contents of a zip disc. *Id.* at 425.

Here, the plain language of the Premises Warrant authorized the officers to search for photographs and videotapes of individuals involved in the trafficking of untaxed cigarettes. (ECF #28-3). While the Premises Warrant provided some examples of where such images might be located ("undeveloped rolls of film and disposable cameras"), nothing in the Premises Warrant limited the scope of "photographs and videotapes." Thus, the Premises Warrant particularly set forth the categories of materials to be seized, without specifically enumerating or limiting the exact materials encompassed therein. As a digital

4

camera captures and stores photographs and videos, the digital camera was lawfully seized and accessed.

The government respectfully submits that the analysis may end here; as the Premises Warrant was lawfully executed, the Digital Camera Warrant, by extension, was lawfully obtained and executed. However, even were the Court to determine that the officers exceeded the lawful authority of the search warrant by examining the digital camera, which the government strongly disputes, the officers executed the warrant in "objective good faith." *United States v. Cancelmo*, 64 F.3d 804, 807 (2d Cir. 1995) *citing United States v. Leon*, 468 U.S. 897, 922-923 (1984); *United States v. Benedict*, 104 F.Supp.2d 175, 182-83 (W.D.N.Y. 2000) (Larimer, J). Suppression is an appropriate remedy only "(1) where the issuing judge has been knowingly misled; (2) where the issuing judge wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient ... that reliance upon it is unreasonable." *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008) *citing United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992); *Leon*, 468 U.S. at 922-923. There is no allegation here that the officers knowingly misled Judge Elliot or that Judge Elliott wholly abandoned his judicial role. Indeed, the defendant does not challenge the sufficiency of the probable cause underlying the application for either the Premises Warrant or the Digital Camera Warrant. And, there is no indication that the officers were unreasonable in relying upon the Premises Warrant.

As set forth in the application for the Premises Warrant, Officer Perkins had been a Police Officer since 2008 and had experience with those who traffic in unstamped and

untaxed cigarettes. (ECF #28-2). As pertinent to the defendant's motion, Officer Perkins' affidavit stated that, based upon his training and experience:

> e.  Traffickers commonly have photographs of themselves, their associates, their property and their products in their possession.
>
> h.  Photographs depicting individuals involved in untaxed and unstamped cigarette violations or identifying traffickers and their associates.

(ECF #28-2, ¶6). Accordingly, based upon his training and experience, and given the plain language of the Premises Warrant, it was not unreasonable for Officer Perkins and the other officers to search for photographs within 399 Electric Avenue. Moreover, reading the warrant in a "common sense way" it was not unreasonable for the officers to seize and inspect the digital camera, knowing that it is a device that not only captures, but also stores, photographs and videos. Rather than conducting general search or indiscriminate rummaging, the officers inspected the digital camera in order to search for photographs and videos, as explicitly enumerated in the search warrant. *See*, *e.g.*, *United States v. Shi Yan Liu*, 239 F.3d 138, 141 (2d Cir. 2000) (agents' efforts to examine the contents of a file cabinet and observe fraudulent asylum applications before seizing the entire cabinet demonstrated compliance with the warrant and was not an exploratory search).

Indeed, the officers' good faith is evidenced by their efforts to obtain a second warrant – the Digital Camera Warrant. Upon seeing images of potential child pornography, the officers stopped their inspection of the digital camera and presented the matter to a neutral and detached judicial officer. *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983); *Leon*, 468 U.S. at 922. The affidavit presented to Judge Elliott by RPD Investigator Brian Tucker set forth, in detail, the course of events that lead the officers to obtain the digital camera, to

observe its contents and to seek authorization to search the camera for evidence of child exploitation offenses. (ECF #28-4).

Accordingly, the defendant's motion to suppress the digital camera should be denied as the RPD officers' seizure of the digital camera was authorized by the Premises Warrant, which they executed in good faith and in reasonable reliance upon its terms. To the extent that the Court determines that an issue of fact exists, the government respectfully requests that a hearing be scheduled. Additionally, should the defendant seek to supplement his submission, the government requests that it be given an opportunity to so respond.

## **DISCOVERY, INSPECTION AND BRADY**

Counsel for the United States has fully complied with this Court's Scheduling Order, as well as its obligations pursuant to Rule 16(a) of the Federal Rules of Criminal Procedure. The government is fully aware of and acknowledges its responsibilities under the doctrine of *Brady v. Maryland*, 373 U.S. 83 (1963). *Brady* does not create a constitutional right to pre-trial discovery in a criminal proceeding, and it does not require that the prosecution reveal before trial the names of all its witnesses. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Nor does it require the disclosure of evidence affecting the credibility of prosecution witnesses before it would otherwise become available under the discovery rules or the Jencks Act. *See United States v. Dotel*, No. 93 CR 173, 1994 WL 25787, slip op. at 3 (S.D.N.Y. 1994) (*Brady* impeachment material as to government witnesses – *i.e.*, *Giglio* material – is properly disclosed when a witness testifies at trial); *United States v. Feldman*, 731 F. Supp. 1189, 1200 (S.D.N.Y. 1990); *United States v. Victor Teicher & Co. L.P.*, 726 F. Supp. 1424, 1442-43 (S.D.N.Y. 1989).

At the present time, the government is not in possession of any "exculpatory" material within the contemplation of *Brady*, but does acknowledge its continuing duty under *Brady* to produce such material, if and when it is aware of it. Material considered to be impeachment material, disclosable pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), will be disclosed two weeks prior to trial, or as required by the court's pre-trial order. With respect to the defendant's particularized requests, the government responds as follows:

A. <u>Statements</u>

The government believes that all statements which are discoverable by defendant under Fed.R.Crim.P. 16(a)(1)(A) and (B) have been provided to defendant during voluntary discovery. To the extent that any others are identified, they will be provided.

B. <u>Law Enforcement Documents</u>

All material discoverable under Fed.R.Crim.P. 16(a)(1)(E) and (F) was made available for inspection as part of voluntary discovery. To the extent that any other material is identified, it will be provided. The government will provide the defendant's criminal history under separate cover.

C. <u>Third Party Documents</u>

The government is not in possession of material responsive to this request. To the extent that any such material is identified, it will be provided.

D. Other Documents

All material discoverable under Fed.R.Crim.P. 16(a)(1)(E) and (F) was made available for inspection as part of voluntary discovery. To the extent that any other material is identified, it will be provided.

E. Tapes, Photographs

The government has previously provided photographs taken during the execution of the search warrant at 399 Electric Avenue, as well as photographs of the General Imaging 7.0 megapixel A735 digital camera and enclosed LEXAR platinum II 60x 1GB SD card. Pursuant to the Adam Walsh Act, 18 U.S.C. § 3509(m), the government is prohibited from providing the defendant or his counsel with evidence containing images and videos depicting child pornography. However, the government has made this evidence available for defense counsel's review and inspection. The government is presently unaware of any other audio or visual recordings, but to the extent others are identified, they will be provided.

F. Transcripts

No such conversations were recorded or transcripts created in this case.

G. Physical Evidence

All material discoverable under Fed.R.Crim.P. 16(a)(1)(E) was produced and made available for inspection as part of voluntary discovery. To the extent that any other material is identified, it will be provided.

H. <u>Favorable Information</u>

The government acknowledges its continuing duty to produce so-called *Brady* material and, to the extent that any is identified, will provide the defense with the same. To the extent that the defendant seeks material disclosable pursuant to *Giglio* or the Jencks Act, the government will provide such materials two weeks before trial or as required by the trial court's pretrial order. The government notes that the Indictment does not charge the defendant with the possession of controlled substances.

I. <u>Impeaching Information</u>

The government will provide impeachment material, pursuant to both *Giglio* and the Jencks Act, two weeks before trial or as required by the trial court's pretrial order.

J. <u>Expert Testimony</u>

The government is aware of its obligations, pursuant to Federal Rules of Criminal Procedure Rule 16(a)(1)(G) and Federal Rules of Evidence Rules 702, 703 or 705, to provide a "written summary of any testimony that the government intends to use" and will meet that obligation at an appropriate time and under separate cover.

## **BILL OF PARTICULARS**

The law regarding requests for bills of particulars is well settled. The limited function of a bill of particulars is "to provide [the] defendant[s] with information about the details of the charge[s] against * * * [them] if this is necessary to the preparation of * * * [their] defense, and to avoid prejudicial surprise at trial." *United States v. Torres*, 901 F.2d 205, 234

(2d Cir. 1990), cert. denied, 498 U.S. 906 (1990); *see also*, *United States v. Persico*, 621 F.Supp. 842, 868 (S.D.N.Y. 1995).

A bill of particulars is accordingly "not to be used as a general investigative tool for the defense, as a device to compel disclosure of the Government's evidence of its legal theory prior to trial, or to foreclose the Government from using proof it may develop as the trial approaches." *United States v. Jimenez*, 824 F.Supp. 351, 363 (S.D.N.Y. 1993) (citations omitted). The Government may therefore "not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which a defendant committed the crime charged, or to give a preview of its evidence and legal theories lest the defendant tailor his testimony to explain the Government's case." *Id.* (citations omitted); *see also*, *Torres*, 901 F.2d at 234 (bill of particulars may not be used to compel the government to provide "evidentiary detail" about its case).

The standard to be applied when evaluating a request for a bill of particulars is not whether the information may be helpful to the defense, but whether it is necessary. *See United States v. Love*, 859 F.Supp. 725, 738 (S.D.N.Y. 1994), *aff'd sub nom.*, *United States v. Roberts*, 41 F.3d 1501 (2d Cir. 1994). Accordingly, courts have generally denied a bill of particulars when the information sought by the defendant is contained in the indictment or "some acceptable alternative form," such as discovery materials previously provided by the government. *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004); *see also United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (stating that "a bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means").

The particulars requested by the defendant are readily answered by reference to the counts in the Indictment and the voluntary discovery that has already been provided. Counts 1 and 2 of the Indictment specifically allege the particular video files the defendant is charged with producing. Count 3 of the Indictment describes with particularity the material containing child pornography the defendant is alleged to have possessed. Moreover, the government has made available discovery, including the entire contents of the General Imaging digital camera and SD card that are the subject of Count 3. The government respectfully submits that all of the information sought is apparent from the face of the Indictment itself, as well as the particularized discovery produced and made available to the defense. *See*, *e.g.*, *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984) (indictment set forth sufficient particularity); *United States v. Swartz*, 07-CR-6028L, 2008 WL 2357408, *9 (W.D.N.Y. June 4, 2008) (Larimer, J) (voluntary discovery adequately advised defendant of charges against him). Of course, if there is any specific category of particulars which the Court believes the government should address, the government will do so at the time of oral argument or through a supplemental brief. As it stands, the defendant's motion for a bill of particulars should be denied.

## **WITNESS STATEMENTS (JENCKS ACT)**

The government agrees to provide material pursuant to the Jencks Act (Title 18, United States Code, Section 3500) two weeks before the commencement of trial in this case or pursuant to the Court's pretrial order, which ever date is first. *United States v. Feola*, 651 F. Supp. 1068, 1141 (S.D.N.Y 1987).

## RULE 404(b) MATERIAL

The defendant seeks notice of the government's ability to use prior criminal acts and other conduct within the scope of Federal Rules of Evidence Rules 404(b). Counsel for the United States is aware of and will comply with the notice requirements pursuant to Rule 404. Any questions with respect to the propriety and the timing of the disclosure of any Rule 404(b) information can be addressed to the trial court at the time of the pre-trial conference.

## RULES 608 / 609 MATERIAL

With respect to the disclosure of material pursuant to Rule 609, the government will provide a copy of the defendant's criminal history under separate cover. Should the government become aware of any other Rule 609 evidence, the government will provide notice of such evidence, if any, in advance of trial and according to the pre-trial scheduling order.

Counsel for the United States notes that to provide defense counsel with advance notice of impeachment evidence – whether under Rule 608, Rule 609 or otherwise – would obviously destroy its effectiveness and would undermine the truth seeking function of the jury. As at least one court has held, there is simply "[n]o rule or rationale [which] guarantees the defense advance knowledge of legitimate impeachment before it calls a witness."[4] *United States v. Baskes*, 649 F.2d 471, 477 (7th Cir. 1980), *cert. denied*, 450 U.S.

---

[4] It should be noted in this regard that courts have refused to read the "reasonable notice" requirement to Rule 404(b) as requiring the pretrial disclosure of impeachment evidence. *See*, *e.g.*, *United States v. Alex*, 791 F.Supp. 723, 728-29 (N.D. Ill. 1992) (rejecting argument that amendment to Rule 404(b) can be read to require pretrial disclosure of 608(b) evidence); *United States v. Allen*, 1993 WL 427717 (N.D. Ill. 1993) (same).

1000 (1981); *cf. United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993) (evidence does not become discoverable "merely because it would have dissuaded the defendant from proffering easily impeached testimony"). Any question as to the timing of the disclosure of Rule 608 or Rule 609 information may be addressed to the trial court at the time of the pretrial conference.

## ROUGH NOTES

Counsel for the United States acknowledges its obligation to insure that agents preserve their rough notes. *But see*, *United States v. Gotchis*, 803 F.2d 74 (2d Cir.1986); *United States v. Griffen*, 659 F.2d 932, 937 (9th Cir. 1981), cert. denied, 456 U.S. 949 (1982); *United States v. Ammar*, 714 F.2d 238 (3d Cir. 1983), cert. denied, 464 U.S. 936 (1983).

## GOVERNMENT'S REQUEST FOR RECIPROCAL DISCOVERY AND RESERVATION OF RIGHTS

Pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure, the government hereby requests reciprocal discovery. Specifically, the government requests that it be allowed to inspect and copy books, papers, documents, photographs, tangible objects, or copies or portions thereof which are within the possession, custody or control of the defendant and which the defendant intends to introduce as evidence-in-chief at the trial. Additionally, the government requests to inspect and copy any results or reports of physical or mental examinations and/or of scientific tests or experiments made in connection with this case – including forensic computer examinations - within the possession or control of the defendant which the defendant intends to introduce as evidence-in-chief at the trial or which

was prepared by witness whom the defendant intends to call at the trial when the results or reports relate to that witness's testimony. As of this date, the defendant has not provided any reciprocal discovery to the government.

Pursuant to Federal Rules of Evidence Rules 803(24) and 804(b)(5), the government also requests advance disclosure of any statement(s) the defendant proposes to utilize at a trial of this matter.

The government further reserves the right to respond to any additional motions filed by the defendant.

## **CONCLUSION**

For the reasons specified herein, the defendant's motions for various forms of relief should be denied except insofar as the materials and information requested have been provided, are moot, or the relief sought is not at issue.

Dated: Rochester, New York, July 10, 2013

                                          Respectfully submitted,
                                          WILLIAM J. HOCHUL, Jr.
                                          United States Attorney

By:    s/Marisa J. Miller
        MARISA J. MILLER
        Assistant United States Attorney
        100 State Street, Suite 500
        Rochester, NY 14614
        (585)399-3900
        Marisa.Miller@usdoj.gov

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

            -v-                           13-CR-6036(DGL/MWP)

WILLIAM E. MILLER,

        Defendant.

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2013, I electronically filed the foregoing with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participant(s) on this case:

Christian J. Kennedy, Esq.


                                            s/Lisa Yehl
                                            Lisa Yehl