IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

WILLIAM E. MILLER,

                Petitioner,                15-CV-6342L
                                                                     13-CR-6036L

    -vs-

UNITED STATES OF AMERICA,

                Respondent.

---

## GOVERNMENT'S RESPONSE TO MOTION
## PURSUANT TO 28 U.S.C. § 2255

The United States of America, by and through its attorneys, William J. Hochul, Jr., United States Attorney for the Western District of New York, and Craig R. Gestring, Assistant United States Attorney, of counsel, hereby makes and files its response to the petitioner's motion pursuant to 28 U.S.C. § 2255.

## PROCEDURAL HISTORY

On March 7, 2013, a federal grand jury returned a three-count indictment charging the petitioner, William E. Miller (hereinafter "Miller"), with producing and possessing child pornography in violation of 18 U.S.C. §§ 2251(a), 2251(e) and 2252A(a)(5)(B).

On June 4, 2013, Miller filed pretrial motions that included a request that the images recovered from his General Imaging 7.0 mega-pixel A735 digital camera containing one

1

LEXMAR platinum II60x 1GB SD card as well as other digital media be suppressed purportedly because the search warrant issued (hereinafter "Premises Warrant") authorized the search of only Miller's residence and "photographs and video tapes…undeveloped rolls of film and disposable cameras", and did not authorize the search of a digital camera or images saved digitally on a SD card. Miller argued that the initial search of the digital camera and SD card recovered by the officers of the Rochester Police Department during the execution of the Premises Warrant exceeded the scope of that warrant and constituted an unreasonable search, in violation of the Fourth Amendment.

In the motion the defendant argued, that, without authority, the officers were prohibited from examining his digital camera. On July 10, 2013, the government responded to Miller's suppression motion arguing that it should be denied because the Premises Warrant particularized the items to be searched for and seized, that is "photographs and video tapes" … "including undeveloped rolls of film and disposable cameras." The plain language of the Premises Warrant authorized the officers to search for photographs and videotapes of individuals involved in the trafficking of untaxed cigarettes. While the Premises Warrant provided some examples of where such images might be located ("undeveloped rolls of film and disposable cameras"), nothing in the Premises Warrant limited the scope of "photographs and videotapes." Thus, the Premises Warrant particularly set forth the categories of materials to be seized, without specifically enumerating or limiting the exact materials encompassed therein. As a digital camera captures and stores photographs and videos, the digital camera was lawfully seized and accessed.

The government submitted that as the Premises Warrant was executed in good faith

and in reasonable reliance upon its terms. Upon seeing images of potential child pornography, the officers stopped inspection and obtained a warrant for the digital camera.

The magistrate judge and ultimately this Court found that suppression of the digital camera contents was unwarranted. Although the Premises Warrant was for items unrelated to child pornography, the description in the warrant was, in part, directed to the search of "photographs and video tapes," including "undeveloped rolls of film and disposable cameras." When officers found, turned on the digital camera with the memory card and discovered the images, they took steps to obtain a search warrant for the digital camera. The court wrote "I do not believe that turning on the camera based on the description in the original warrant violated the directives of that warrant." This court agreed with the Magistrate court that the good faith exception to the exclusionary rule as enunciated in *United States v. Leon*, 468 U.S. 897 (1984) and its progeny should apply in this case. This court denied Miller's motion to suppress tangible evidence resulting from the warrants in all respects.

On May 13, 2014, Miller appeared before this Court and Fed.R.Crim.P. 11(c)(1)(B), entered a guilty plea to a one-Count Superseding Information charging violation of Title 18, United States Code, Section 2422(b)(coercion and enticement). [A copy of the plea agreement is annexed hereto as Exhibit 1]. The agreement further provided that, should the District Court impose a sentence of a life sentence or less, Miller would be forever precluded from challenging his sentence either on direct appeal or collaterally. Specifically, paragraph 20 of the agreement explicitly provided:

> The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or

is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 13, above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

Paragraph 21 of the agreement further provided:

> The defendant understands that by agreeing to not collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

The plea agreement was executed in open court following an extensive plea colloquy. To ensure that Miller understood the terms of the appeal and collateral attack waivers, this Court conducted the following exchange:

> **THE COURT:** Somewhere here there is an appeal waiver section, over on page 9, there are several paragraphs there, sir, but what it means to me is that if the Court sentences you within the guideline range, that's 360 months to life, you give up your right to appeal that sentence.
>
> Do you understand that?
>
> **THE DEFENDANT:** Yes, Your Honor.
>
> **THE COURT:** That means you give up the right to file a direct appeal or to file something called a "collateral attack" or a *habeas corpus* or 2255. Do you understand those are covered by this also?
>
> **THE DEFENDANT:** Yes, Your Honor.

[Transcript of the May 13, 2014 Plea Hearing, p 21, attached hereto as Exhibit 2.]

During the course of the plea colloquy, this Court also carefully reviewed the salient terms of the agreement. The Court confirmed that Miller was informed of the charges (Ex. 2,

pp. 9-11, 26-27), agreed to the facts that supported the charges (Ex. 2, pp. 12-18), and fully understood the material terms of the agreement and the consequences of pleading guilty (Ex. 2, pp. 2-8, 11-12, 17-21). This Court also confirmed that Miller was satisfied with the representation provided by defense counsel (Ex. 2, pp. 25-26).

Further, this Court determined that Miller had not been forced or coerced in any way into entering the guilty plea, and that it was his desire and decision to enter the plea of guilty (Ex. 2, pp. 5-6, 26-27). After the careful discussion with Miller, this Court determined that he was competent and capable of entering a plea, that there were facts to support the plea, and that the plea was knowing and voluntary; therefore, the Court accepted Miller's plea of guilty (Ex. 2, pp. 5-7, 28).

Prior to sentencing, the Probation Department prepared a Presentence Investigation Report ("PSR"). Notably, the sentencing calculations in the PSR were identical to those contained in the plea agreement. On December 1, 2014, Miller filed a "Statement of Defendant with Respect to Sentencing Factors," ("Statement") in which he concurred with the criminal history category, the offense level computations and adjustments set forth in the PSR. Further Miller agreed with the government that the advisory guideline range was 360 months to life. Although, in the Statement Miller's attorney asked this court to consider the "history and characteristics of William Miller, the nature and circumstances of the offense, the human failings that sometimes mitigate the crime and punishment, William's health issues, and the belief by many that the sentencing guideline range in William's case was in violation of 18 U.S.C. § 3553. He argued the sentencing guideline range 30 years to life was far greater than necessary to satisfy the purpose of sentencing.

On December 19, 2014, Miller appeared before this Court for sentencing. After

5

making the requisite findings under 18 U.S.C. § 3553(a), this Court honored Miller's request and sentenced him to a term of imprisonment of 14 years. [A copy of the sentencing transcript is annexed hereto as Exhibit 3, p. 25]. No Notice of Appeal was filed.

On June 1, 2015, Miller filed a *pro se* motion pursuant to 28 U.S.C. § 2255. Miller's *pro se* arguments are vague and unsupported by any facts. He does make an ineffective assistance of counsel claim. He provides in sum and substance, under grounds for this action that his attorney lied to him, that there was a "lack of effort" by his attorney, that he was told a lot of things that were not true and further that he wants to challenge the original warrant.

## **ARGUMENT**

To obtain relief under 28 U.S.C. § 2255, a petitioner in federal custody must show that his sentence (1) was imposed in violation of the United States Constitution or the laws of the United States; (2) was entered by a court without jurisdiction to imposed the sentence; (3) exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255. Collateral relief is available only for a constitutional error "that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995), quoting *Hill v. United States*, 368 U.S. 424, 428 (1962). As the Second Circuit has explained, "[t]he reasons for narrowly limiting the relief permitted under § 2255 – a respect for the finality of criminal sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years after the underlying events took place – are 'well known and basic to our adversary system of justice.'" *Bokun*, 73 F.3d at 12; quoting *United States v, Addonizio*, 442 U.S. 178,184 (1979).

## I. MILLER'S CLAIMS ARE PROCEDURALLY BARRED BY THE COLLATERAL ATTACK WAIVER

As part of the written plea agreement, Miller unambiguously waived his right to file a collateral attack of his sentence. (Ex. 1, ¶¶ 20, 21). When a defendant pleads guilty and waives the right to file a collateral attack under § 2255, the only exception to the procedural bar is where ineffective assistance rendered the plea unknowing and involuntary. *United States v. Parisi*, 529 F.3d 134, 138 (2d Cir. 2008). First, other than making references to his "lack of knowledge" in this instant motion, Miller at no point argues that his plea was not knowing, intelligent or voluntary. On that basis alone, pursuant to *Parisi*, this motion is barred and should be dismissed.

Moreover, the ineffective assistance of counsel claim Miller raises is meritless and does not provide a basis to circumvent the procedural bar. Having agreed to the terms of the plea agreement, Miller should not be allowed to undo his agreement with the government. Ultimately, the sentence imposed does not violate the United States Constitution or laws of the United States, was entered by a Court with jurisdiction to impose sentence, and did not exceed the maximum detention allowed by law (in this case, up to life). Thus, the waiver should be upheld and the instant motion dismissed, or in the alternative, denied in its entirety.

Plea bargaining "is an essential component of the administration of justice. Properly administered, it is to be encouraged." *Santobello v. New York*, 404 U.S. 257, 260 (1971). In specifically addressing collateral attacks when a conviction has been obtained by way of a guilty plea, the Supreme Court has stated, "[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Bousley v. United States*, 523 U.S. 614, 621 (1998). The Supreme

Court further stated:

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack. *United States v. Broce*, 488 U.S. 563, 569 (1989).

The Second Circuit has also upheld waivers of collateral attack holding that "[t]here is no general bar to a waiver of collateral attack rights in a plea agreement." *Frederick v. Lewisburg Correctional Facility*, 308 F.3d 192, 195 (2d Cir. 2002), see also *Garcia-Santos v. United States*, 273 F.3d 506, 509 (2d Cir. 2001). It is "well-settled that a defendant's knowing and voluntary waiver of his right to [collaterally attack] a sentence within an agreed upon guidelines range is enforceable." *United States v. Djelevic*, 161 F.3d 104, 106-07 (2d Cir. 1998) (per curiam) (citing cases).

"[A] defendant who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, [may not] then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless." *United States v. Salcido-Contreras*, 990 F.2d 51, 53 (2d Cir. 1993); see also *United States v. Granik*, 386 F.3d 404, 412 (2d Cir. 2004) ("Knowing and voluntary appellate waivers included in plea agreements must be enforced because, if they are not, the covenant not to appeal becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants."). "Like a waiver of direct appeal rights, [a § 2255 waiver] serves the government's interest in avoiding both the expense and uncertainty of further litigation." *Garcia-Santos v. United States*, 273 F.3d at 509.

Again, the only exception to this procedural bar is where alleged ineffectiveness of counsel rendered the petitioner's plea, and the waivers therein, unknowing and involuntary. *See United States v. Hernandez*, 242 F.3d 110, 113-14 (2d Cir. 2001) (per curiam); *Frederick v. Lewisburg Correctional Facility*, 308 F.3d at 195-96. The only question in this regard is "the constitutionality of the process by which the plea agreement was consummated. If the constitutionality of that process passes muster, the plea agreement's waiver would bar any consideration ... of issues that fall within the scope of that waiver." *Hernandez*, 242 F.3d at 114.

Because guilty pleas are generally accorded finality, *the petitioner bears the burden* of showing that the appeal and collateral attack waivers were not knowing and voluntary. *United States v. Wildes*, 910 F.2d 1484, 1486 (7th Cir. 1990); *see also United States v. Hargrove*, 2004 WL 2123497, *2 (W.D.N.Y. August 10, 2004) ("the petitioner bears the burden of showing that the waiver of his right to appeal or collateral attack his sentence was not knowing or voluntary").

**Miller's Plea Was Knowing and Voluntary**

Miller's plea was executed pursuant to Rule 11 of the Federal Rules of Criminal Procedure, which dictates that the District Court must ensure that a plea is knowing and voluntary. *Hill v. Lockhart*, 474 U.S. 52 (1985). "A plea is voluntary when it is not induced by threats or misrepresentations, and the defendant is made aware of the direct consequences of the plea ... [a] plea is knowing and intelligent when the defendant is competent, aware of the charges and advised by competent counsel." *United States v. Galbraith*, 313 F.3d 1001, 1006 (7th Cir. 2002), *citing Brady v. United States*, 397 U.S. 742, 755 (1970); *see also Godinez v. Moran*,

509 U.S. 389, 401 (1993) ("the purpose of the 'knowing and voluntary' inquiry ... is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced.").

"Three core concerns underlie [Rule 11]: (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." *United States v. Siegel*, 102 F.3d 477, 481 (11th Cir. 1996), *see also United States v. Hernandez-Fraire*, 208 F.3d 945 (11th Cir. 2000). To accomplish this aim, Rule 11 "ensures a colloquy that 'exposes the defendant's state of mind in the record through personal interrogation.'" *Key v. United States*, 806 F.2d 133, 136 (7th Cir. 1986) (citations omitted). "[W]here the court has scrupulously followed the required procedure, 'the defendant is bound by his statements in response to that court's inquiry.'" *Warner v. United States*, 975 F.2d 1207, 1212 (6th Cir. 1992) (citations omitted).

The transcript of the plea proceeding reveals that all of the requirements were met to establish that Miller's guilty plea was indeed knowingly and voluntarily entered. This Court took great care to review the terms of the plea agreement with Miller during the plea colloquy. The record confirms that Miller understood the nature of the charges and the consequences of pleading guilty (Ex. 2, pp. 2-8, 11-12, 18-21), that he did so with the advice of counsel (Ex. 2, pp. 4-6, 25-26), and voluntarily without any coercion (Ex. 2, pp. 6, 26-27). This Court advised Miller of the collateral attack waiver and Miller unequivocally confirmed he understood that if he were sentenced within the 360 month to life range that he would not be able to collaterally attack his sentence. (Ex. 2, pp. 18, 21) "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

In sum, Miller's own statements during the plea colloquy demonstrate that his guilty

plea as a whole was unequivocally knowing and voluntary. Indeed, this Court made a specific finding on the record that Miller's plea was being entered into knowingly and voluntarily. (Ex. 2, p. 28) Moreover, Miller acknowledged in the last paragraph of the plea agreement that he read the agreement, discussed the contents of the agreement with counsel, understood the consequences of entering a plea of guilty, fully agreed with the contents of the agreement, and that he was signing it voluntarily. (Ex. 1, p. 13).

Given that there was a negotiated agreement between the government and Miller, based upon consideration received by both parties, Miller should be held to the terms of his plea agreement and the waivers contained therein. *Before* Miller entered his plea of guilty, this Court confirmed that he understood the sentencing possibilities, and further, that he was of sound mind, understood the charges, and was not coerced into pleading guilty. In other words, before accepting the plea, this Court ascertained that it was intelligent, knowing and voluntary. "[T]he representations of the defendant [at a plea hearing] ... constitute a formidable barrier in any subsequent collateral proceeding. ... The subsequent presentations of conclusory allegations unsupported by specifics [in a habeas petition] is subject to summary dismissal." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Miller fails to meet his burden showing that his collateral attack waiver was not knowing and voluntary. Since the record unambiguously establishes that Miller's plea was voluntary, knowing and intelligent, pursuant to *Bousley, Broce,* and *Blackledge*, Miller's collateral attack should be foreclosed and the instant motion dismissed.

II. **MILLER'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM IS WITHOUT MERIT**

Were this Court to consider Miller's claim despite his collateral attack waiver, it

should be rejected on its merit. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a performance and prejudice test to evaluate the claim that trial counsel in a criminal case has been ineffective. In order to make a successful ineffective assistance of counsel claim, a defendant faces a "difficult two part test." *DeLuca v. Lord*, 77 F.3d 578, 584 (2d Cir. 1996). He must demonstrate (1) that counsel's performance was deficient as measured against "an objective standard of reasonableness...under prevailing professional norms," and (2) that counsel's deficient performance was prejudicial to his case. *Strickland v. Washington*, 466 U.S. at 687-88 (1984); *see also Morales v. United States*, 635 F.3d 39, 43 (2d Cir. 2011); *United States v. Brown*, 623 F.3d 104, 112 (2d Cir. 2010).

A petitioner cannot meet the first prong of the *Strickland* test merely by showing that his counsel employed poor strategy or made a wrong decision. Instead, a petitioner bears the "heavy burden," *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004), of establishing that his counsel "made errors so serious that [he] was not functioning as the 'counsel' guaranteed...by the Sixth Amendment," *Strickland*, 466 U.S. at 687; *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013). There is a "strong presumption" in this regard that a defense counsel's conduct fell within the broad spectrum of reasonable professional assistance. *Id.* at 689; *Burt v. Titlow*, 134 S. Ct. at 17; *Vadas v. United States*, 527 F.3d 16, 20 (2d Cir. 2007). This presumption is necessary because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence... " *Strickland*, 466 U.S. at 689.

In the context of a guilty plea, a defendant must demonstrate that counsel's deficient performance undermines the voluntary and intelligent nature of a defendant's decision to plead guilty. *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005). A guilty plea "is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion

overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988). As noted above, evidence from Miller's plea colloquy provides assurance that his plea was knowing and entirely voluntary.

To satisfy the prejudice prong of *Strickland*, a petitioner must show that there is a "reasonable probability" that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694; *see also Morales v. United States*, 635 F.3d at 43. In the plea context, Miller must show that there is a reasonable probability that, but for counsel's errors, he would not have plead guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52 (1985).

To establish counsel's ineffectiveness, both prongs of the *Strickland* test must be satisfied. A failure to satisfy one prong relieves the Court of the necessity for satisfying the other prong. *Strouse v. Leonardo*, 928 F.2d 548, 556 (2d Cir. 1991). More particularly, "if it is easier to dispose of an ineffective claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *United States v. O'Neil*, 118 F.3d 65, 73 (2d Cir. 1997), quoting *Strickland*, 466 U.S. at 697. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Rompilla v. Beard*, 545 U.S. 374 (2005). "It is therefore only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." *Strickland*, 466 U.S. at 711; see *Morales v. United States*, 635 F.3d at 43.

### A. Counsels Performance

Miller fails to overcome the "strong presumption" that the assistance of counsel was reasonably professional, nor has he met the "heavy burden" placed upon him to show that counsel's errors were so serious that he was not functioning as "counsel" guaranteed by the Sixth Amendment as required. Miller claims in his *pro se* motion that counsel's performance was deficient by broad and unsupported assertions. In sum and substance, he claims that 1) there was a "lack of effort" by counsel, 2) counsel was ineffective, 3) counsel lacked knowledge and 4) counsel told him a lot of the things that weren't true and "lied to" him. (Petitioner's Motion to Vacate, pp. 3-6) These claims are without merit. He further states that he wants to challenge the original warrant. (Petitioner's Motion to Vacate, p. 3).

At the outset, in accordance with *United States v. Arteca*, 411 F.3d at 320, since Miller pled guilty, in order to show that counsel's performance was deficient, he *must* demonstrate that deficient performance caused an unknowing or involuntary plea. Miller cannot make that required showing. First, and most importantly, at no time has Miller declared that his plea was not knowing, intelligent or voluntary. Furthermore, the record of the plea hearing, and Miller's signature on the plea agreement, unambiguously demonstrate that his plea was indeed knowing and voluntary. Additionally, this Court made a specific finding on the record at the plea hearing - where it was able to personally observe Miller's demeanor and assess his credibility - that the plea was entered into knowingly and voluntarily. (Ex. 2, p. 28)

**1. Challenge to the original warrant**

Miller's claims are broad and vague with no supporting facts. He claims he wants to challenge the original warrant. If he is basically alleging that counsel's performance was

deficient in litigating the suppression of the search warrant for 399 Electric Avenue, Rochester, New York in the District Court, the claim is baseless.

    a. <u>Ineffective Assistance Pre-Trial</u>

The record of the case, as cited below, demonstrates that his experienced attorney was a strong advocate for him, particularly with regard to the suppression issue. Counsel's advocacy illustrated here directly contradicts the reasonableness of Miller's assertions of counsel's lack of effort or knowledge.

On June 4, 2013, defense counsel filed omnibus motions in which he moved for suppression of the physical evidence, that is the digital camera and memory card, obtained from the execution of a search warrant at 399 Electric Avenue in Rochester New York on the ground that they were obtained in violation of his Fourth Amendment rights.

Magistrate Judge Payson subsequently issued a Report and Recommendation denying suppression of the evidence from the warrant for 399 Electric Avenue on Fourth Amendment grounds finding that it was objectively reasonable for the officers to construe the warrant to authorize the search of the digital camera and memory card.

On October 24, 2013, defense counsel continued his advocacy by filing objections to both Report and Recommendations, arguing, that the Search Warrant did not permit search of the digital camera and memory card to look for photographs. Further that the Search Warrant was very specific and the Magistrate Court improperly extended the scope of the warrant. Despite defense counsel's extensive advocacy, this Court accepted and adopted the Report and Recommendation and denied Miller's motion to suppress to the evidence.

In all, defense counsel thoroughly briefed the issue of suppressing the warrant in two detailed separate pleadings and argued the issue at the suppression hearing. In this case, defense counsel's thorough advocacy in attempting to get the evidence from the warrant suppressed was objectively reasonable and certainly did not amount to incompetence. Any claim relating to challenging the warrant is without merit.

B. Prejudice

Miller likewise fails to establish that he suffered the required prejudice. Since Miller pled guilty, in order to establish prejudice pursuant to *Hill v. Lockhart*, he must show that, but for counsel's errors, there is a *reasonably probability* that he would not have pled guilty but instead insisted upon proceeding to trial. At no time does Miller claim that he would have proceeded to trial, nor does he now request a trial.

Further, in the plea agreement, Miller agreed to a sentencing guideline range of 360 to life month's imprisonment. (Ex. 1, ¶ 13) He was also notified of the 10 year statutory mandatory minimum sentence for this offense (Ex. 1, ¶ 1). As noted above, Miller was notified of the possible sentences at the plea hearing before he signed the plea agreement and before he entered his guilty plea before the Court on the record. (Ex. 2, pp. 11, 17-21) He confirmed that he reviewed and understood the plea agreement, voluntarily signed the agreement in the presence of the Court, stated under oath and on the record during the plea hearing that he understood the sentencing range and the minimum and maximum terms of imprisonment, and proceeded to plead guilty with full knowledge that the sentence could fall between 360 months and life, or be at least 120 months (Ex. 2, pp.2-3, 11-12, 17-21, 20-21). "[I]t is difficult for a defendant who was made aware of the actual sentencing possibilities of a plea to demonstrate that he suffered prejudice as a result of counsel's error." *United States v.*

*Guidice*, 2004 WL 1152539, *5 (S.D.N.Y. May 21, 2004); see also *Ventura v. Meachum*, 957 F.2d at 1058.

Miller was likewise notified of the sentencing range in the Presentence Investigation Report ("PSR"), to which he made no objections to the mathematical computation of the guideline range. (Ex. 3, p. 5-7)  At the sentencing hearing, Miller was notified that he faced a mandatory 10 year sentence and that his guidelines provided for a sentence of 360 months to life. (Ex. 3, pp. 3-6)  Miller actively participated in the colloquy and answered all of the Court's questions. (Ex. 3, pp. 5-7, 11-12) Although there was no objection to the any material mattes in the PSR, Miller did not agree the sentence should be 30 years to life. Counsel skillfully set out reasons in his sentencing submissions and on the record. (Ex. 3, pp. 8, 11)

The record is clear that Miller understood and had agreed to the sentencing range of 30 years to life set out in the plea agreement.  The Court imposed a sentence of 14 years, well below the low end of that range.  Accordingly, Miller fails to establish that he suffered any prejudice; therefore, he fails to establish ineffective assistance of counsel.

In sum, reviewing the performance of defense counsel, there is no indication that his performance was anything but reasonable, if not outstanding.  Most notably, defense counsel successfully negotiated a plea agreement and argued for a sentence of 14 years, when the defendant could have received a sentence of 30 years to life.

Considering counsel's performance as a whole, Miller's claim entirely lacks merit. He fails to overcome the "strong presumption" of counsel's reasonable professional assistance, nor has he met the "heavy burden" showing that counsel's errors were so serious that he was not functioning as "counsel" guaranteed by the Sixth Amendment as required. His belated efforts to now attack the skillful representation he received ring hollow.

## **CONCLUSION**

For the reasons state above, the United States respectfully requests that this Court dismiss Miller's motion pursuant to 28 U.S.C. § 2255, or in the alternative, deny it in its entirety.

DATED:    January 26, 2016
                Rochester, New York

                                        WILLIAM J. HOCHUL, JR.
                                        United States Attorney

                BY:   s/Craig R. Gestring
                        CRAIG R. GESTRING
                        Assistant U.S. Attorney
                        United States Attorney's Office
                        Western District of New York
                        100 State Street, Suite 500
                        Rochester, New York 14614
                        (585) 263-6760, ext. 23979
                        Craig.Gestring@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

WILLIAM E. MILLER,

                Petitioner,                    15-CV-6342DGL
                                                  13-CR-6036DGL

   -vs-

UNITED STATES OF AMERICA,

                Respondent.

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2016, I electronically filed the foregoing with the Clerk of the District Court using its CM/ECF system.

I hereby certify that I have mailed the foregoing, by the United States Postal Service, to the following non-CM/ECF participant:

William E. Miller
Reg. No. 22111-055
Otisville FCI
P.O. Box 1000
Otisville, NY 10963

                                                    s/Elizabeth Todd
                                                    Elizabeth Todd