# EXHIBIT 3

1                    UNITED STATES DISTRICT COURT

2                    WESTERN DISTRICT OF NEW YORK

3

4

5    - - - - - - - - - - - - -X
     UNITED STATES OF AMERICA           13-CR-6036(L)
6
     vs.
7                                       Rochester, New York
     WILLIAM MILLER,                    December 17th, 2014
8             Defendant.                3:00 p.m.
     - - - - - - - - - - - - -X
9

10
                       TRANSCRIPT OF PROCEEDINGS
11          BEFORE THE HONORABLE DAVID G. LARIMER
                    UNITED STATES DISTRICT JUDGE
12

13                      WILLIAM J. HOCHUL, JR., ESQ.
                        United States Attorney
14                      BY: CRAIG R. GESTRING, ESQ.
                        Assistant United States Attorney
15                      6200 Federal Building
                        Rochester, New York 14614
16
                        CHRISTIAN J. KENNEDY, ESQ.
17                      45 Exchange Boulevard, Suite 802
                        Rochester, New York 14614
18                      Appearing on behalf of the Defendant

19

20   ALSO PRESENT:      David Spogen, U.S. Probation Office

21   AUDIO RECORDER:    Paul Rand

22   TRANSCRIBER:       Christi A. Macri, FAPR-CRR
                        Kenneth B. Keating Federal Building
23                      100 State Street, Room 2120
                        Rochester, New York 14614
24
     (Proceedings recorded by electronic sound recording,
25   transcript produced by computer).

1          P R O C E E D I N G S

2                    *          *          *

3          (**WHEREUPON**, the defendant is present).

4          **THE COURT:** Good afternoon, all.

5          **MR. KENNEDY:** Good afternoon, Judge.

6          **MR. GESTRING:** Good afternoon, Your Honor.

7          **THE COURT:** Mr. Gestring and Mr. Kennedy.   There

8    may come a time when Mr. Miller wishes to speak.   He

9    certainly can sit.   We do have a portable mic here if that

10   would help you.   We're taping, so it's important that we hear

11   what it is that he has to say, if he wishes to speak.

12          **MR. KENNEDY:** Okay.

13          **THE COURT:** What's your preference, Mr. Kennedy?

14          **MR. KENNEDY:** Judge, when he needs to address the

15   Court that won't be a problem for us to get closer.

16          **THE COURT:** All right, you can hear me all right,

17   Mr. Miller?

18          **THE DEFENDANT:** Yes, Your Honor.

19          **THE COURT:** All right.   Parties ready for

20   sentencing?

21          **MR. GESTRING:** Government's ready, Judge.

22          **MR. KENNEDY:** Yes, Judge.

23          **THE COURT:** Thank you for accommodating us today,

24   Mr. Gestring.

25          **MR. GESTRING:** Government's always ready to proceed,

1  Judge.

2      **THE COURT:** We're here based on Mr. Miller's plea

3  back in May to a one count information charging coercement or

4  enticement of a minor to engage in sexual activity involving a

5  person under the age of 18.   That person or persons entered

6  into with Mr. Miller the production of certain photographs

7  deemed to be -- constitute child pornography.

8      Based on the statute and the charge, Mr. Miller

9  faces a mandatory 10 year term of imprisonment, maximum up to

10 life.

11     The agreement also agreed that Mr. Miller would

12 forfeit the camera and the SD card that was used.

13     The facts are set forth in the plea agreement and

14 in the presentence report, indicate that a search warrant was

15 issued by the Rochester Police Department at Mr. Miller's

16 residence on Electric Avenue for matters unrelated to the

17 present charge.

18     In the process of executing that warrant, the

19 officers discovered items unrelated to this, but also a

20 camera.   A subsequent search warrant was obtained, the camera

21 was examined and viewed and the several pictures that are at

22 issue here were discovered.

23     Minor victims were interviewed and indicated their

24 involvement; one of the child's mothers also confirmed the

25 identity of the child, and also indicated her knowledge of...

1    The plea was entered pursuant to a plea agreement.

2 The parties are familiar with.    The Probation Department did

3 the calculations, and the guideline calculations, as is often

4 the case in child pornography and child pornography related

5 cases, is quite high.

6    The Probation Department determined with

7 Mr. Miller's significant criminal history, he is a level VI,

8 the highest.  The net offense level is 37, and according to

9 the guidelines, that provides for a sentence of 360 months to

10 life.

11    The guideline calculations at the time of the plea,

12 all of them were agreed to.   The victims involved were under

13 16.

14    There was "sexual contact" involved.

15    The child victims were under the "care, custody,

16 supervision" of Mr. Miller.

17    A computer was used.

18    So there do not appear to be much surprise relative

19 to the guidelines.  In fact, the guideline range that I just

20 mentioned is the same the parties anticipated it would be at

21 the time of the plea.

22    So that's where we are relative to guidelines.   Of

23 course, the Court, as counsel knows, must view all the factors

24 under the sentencing statute, Section 3553(a) of Title 18 and

25 impose a sentence that it believes is sufficient, but not more

1  than necessary.

2         I have received filings from you all, in addition

3  to the presentence report, which I referenced; the plea

4  agreement I have reviewed.

5         I have received the Government's statement with

6  respect to sentencing factors filed March -- excuse me,

7  March -- filed December 9th recommending a guideline sentence.

8         I do have, Mr. Kennedy, your statement with respect

9  to sentencing factors filed in early December raising concerns

10 and objections, comments relative to sentencing.

11        First things first.   From your submission,

12 Mr. Kennedy, on page -- I can't point -- in reviewing your

13 submissions, it appears that you did not have any objections

14 to the mathematical computation of the guideline range; is

15 that correct?

16        **MR. KENNEDY:**  Yes, Judge.   Are you referring to

17 just the information that I included in my response to the PSR

18 making reference to be an outstanding statement?  Because I

19 did -- the only thing that's challenged in the PSR or

20 corrected was that that matter had been resolved in state

21 court and what the resolution was.   That was the only -- not

22 even objection, but just correction.

23        **THE COURT:** All right.   But as to the -- the

24 recited guideline calculation here is based on the criminal

25 history category, offense level, guideline range, calls for a

1  sentence of 360 to life.   I know you don't agree that should

2  be the sentence, but my inquiry is do you have any objection

3  to any of the material matters set forth in the presentence

4  report?

5          **MR. KENNEDY:**  No, Judge.

6          **THE COURT:** Mr. Miller, have you also had a chance

7  to review the presentence report?

8          **MR. KENNEDY:**  Reviewed the presentence report that

9  we went over.

10          **THE DEFENDANT:** Not a real good chance, Your Honor,

11  because of the information that was involved in it, I didn't

12  have the opportunity to really sit down in the facility I was

13  at and look at it.

14          I think I basically understand it.

15          **MR. KENNEDY:**  We went over it together.

16          **THE COURT:** Pardon me?

17          **THE DEFENDANT:** We went over it together,

18  Mr. Kennedy and I.

19          **THE COURT:** You had a copy of the report and you

20  reviewed it with Mr. Kennedy?

21          **THE DEFENDANT:** I'm sorry?

22          **THE COURT:** Did you have a copy of the report or at

23  least reviewed Mr. Kennedy's --

24          **THE DEFENDANT:** Yes.

25          **THE COURT:** Did he come down to see you down in

1  New York?

2          THE DEFENDANT: Yes.

3          THE COURT: All right and that's the time you went

4  over the presentence report?

5          THE DEFENDANT: Yeah.

6          THE COURT: All right.  Do you think you need

7  additional time to review the report today?

8          THE DEFENDANT: I don't think so, Your Honor.

9          THE COURT: Well, now's the time.

10         Mr. Kennedy, do you believe you've had a fair and

11 full opportunity to review this report with your client?

12         MR. KENNEDY:  Yes, we did go over it and discuss

13 the contents and what I would be submitting to the Court.   I

14 believe so, yes.

15         THE COURT: All right.   Well, there being no

16 objection to any of the matters in the presentence report,

17 I'll find the guidelines are as indicated and find that they

18 were correctly determined by the probation officer.

19         That I guess is our start point, those are the

20 guidelines.   I think the matter about the state court that

21 you referenced was Mr. Miller's subsequent conviction in state

22 court of the misdemeanor charge of endangering the welfare of

23 a child?

24         MR. KENNEDY:  That's correct.

25         THE COURT: For which I guess he received time

1  served?

2        **MR. KENNEDY:**  That's the information I was -- yes,

3  Judge, that's my understanding.

4        **THE COURT:** All right.  So I take it from that and

5  also from discussing this with Probation Officer Spogen that

6  there's no other pending state charges?

7        **MR. KENNEDY:**  That's correct.

8        **THE COURT:** All right.  At this point the Court

9  must allow counsel and Mr. Miller to speak to the matter.  I

10 certainly received your papers and I'm certainly very aware of

11 what the guidelines are in this case.

12        So I guess, Mr. Kennedy, I'll turn it over to you

13 first.  I don't think everybody has to repeat everything

14 that's said in the papers because I've been doing this for a

15 long time and I know precisely what the positions are, but

16 nonetheless, you may speak to the matters.

17        **MR. KENNEDY:**  Judge, as Your Honor has stated, I

18 know you've read the papers and I won't recite everything that

19 I submitted to the Court.

20        Mr. Miller has requested due to his lengthy medical

21 issues that as opposed to the Court making reference to him

22 being housed as close to Rochester -- or as close to home as

23 possible, that I believe it is the medical facility in

24 North Carolina called Butner, if the Court might make a

25 suggestion to the Bureau of Prisons that might be the

1  appropriate place for him to serve his sentence?

2          And another issue concerning the sentence itself

3  when the Court does impose it, when Mr. Miller was arrested

4  originally on these charges -- well, when he went into custody

5  he was in the hospital.   The state lodged these charges.

6  The charges, as the Court made reference to, the initial

7  search warrant had to do with some cigarettes.   Those charges

8  were lodged against him and they didn't lodge the federal

9  charges until after his release from prison. I guess the

10  policy is the marshals or the FBI won't -- they won't put

11  somebody on guard, so they didn't lodge the charges.

12          And since, it took the state attorneys

13  approximately six to eight months to get him in primary

14  federal custody by getting the hold in state court lifted

15  enough to have that happen.

16          Under the circumstances because those sentences

17  have all been completed or time served, they shouldn't effect

18  his time, but I would ask if the Court might be willing to

19  make concurrent to the state charges any sentence that it does

20  impose just so his time that he has been in will be credited

21  towards it.

22          As far as the sentencing itself --

23          **THE COURT:** Say that again.

24          **MR. KENNEDY:**  Pardon?

25          **THE COURT:** If he's already served his sentence, I'm

1  not sure there's anything for me to run my sentence concurrent

2  or consecutive to.

3       **MR. KENNEDY:** Judge, how I'm -- I agree in the

4  sense that the sentences are -- have been terminated. My

5  client wanted me to make this request.

6       I told him my understanding would be that he would

7  be getting the credit for that because the sentence in state

8  court was time served and it wouldn't consume the time that he

9  had been lodged in when he wasn't in primary federal custody,

10  but he asked that I make that request.

11       **THE COURT:** My understanding is -- well, two things.

12  First of all, the Bureau of Prisons makes determinations as to

13  where Mr. Miller will serve his sentence. I certainly will

14  recommend he serve it at a medical facility, I'll recommend

15  Butner. Butner is a pretty popular facility, so it's up to

16  the Bureau of Prisons. There are other medical facilities,

17  but I'll recommend Butner. I don't think he's ever been

18  there.

19       **MR. KENNEDY:** I don't believe so.

20       **THE COURT:** Point two, the Bureau of Prisons decides

21  matters of credit. It seems clear that Mr. Miller will get

22  credit for any time he's actually been in primary federal

23  custody.

24       There are circumstances that the state charges

25  related to the federal charge, that the Bureau of Prisons

1 might give him credit for that also, but that's a matter that

2 the Bureau of Prisons determines, not this Court.

3       As far as I'm concerned, he'll get whatever credit

4 he's entitled to, but it's a BOP decision, not District Court

5 decision.

6       **MR. KENNEDY:** Thank you, Judge.

7       With regards to the substance of my submissions to

8 the Court, the other thing I would bring up because as the

9 Court has stated, Mr. Miller's criminal history category is

10 extremely lengthy in the sense of the number of convictions

11 there are.

12       And I would just -- I'm sure the Court read my

13 submissions and also reviewed the papers carefully to see that

14 just about all of them are misdemeanor convictions.  There's

15 no convictions of violence.

16       Mr. Miller's history, I will leave to my

17 submissions the status of Mr. Miller's medical situation and

18 just ask the Court to impose what it feels is the appropriate

19 sentence in this matter in light of what we've submitted to

20 the Court.

21       **THE COURT:** All right, thank you.

22       Mr. Miller, the rules provide that at this point

23 you have the right to make a statement to me, the sentencing

24 judge.  You don't have to make a statement, but if you wish

25 to, the Court will hear it.

1          If you do make a statement, just keep your voice up

2  because we are taping here.

3          **THE DEFENDANT:** Yes, sir.

4          **THE COURT:** If you want to stand if you're able,

5  that's fine.   If not, we have a portable mic that you can use

6  and it works quite well.

7          **THE DEFENDANT:** I would just like to apologize to

8  the Court, to the victim, the family, to my friends and

9  family, to myself for putting myself in a stupid position.

10          And I can assure you it was an isolated incident.

11  I've never done, never will and I'm just hoping that the Court

12  will give me leniency.

13          **THE COURT:** All right.   Anything else?   Thank you.

14          **THE DEFENDANT:** I think that's all, Your Honor,

15  thank you.

16          **THE COURT:** All right.   Mr. Gestring, the

17  Government's thoughts, if any?

18          **MR. GESTRING:** Yes, Judge, thank you.

19          Judge, I would start by reminding the Court that

20  he's already received a significant sentencing benefit by

21  virtue of pleading to enticement, which is a 10 year mandatory

22  minimum as opposed to production, which is a 15 year mandatory

23  minimum, which the facts clearly support.

24          Judge, applying the 3553(a) factors to this

25  defendant, they clearly support the imposition of a guideline

1  sentence.   In the defendant's sentencing statement, Judge,

2  specifically at paragraph 12 he references how the nature and

3  circumstances of the offense and the history and

4  characteristics of the defendant should be the primary factors

5  for this Court to consider, and we agree with that, Judge.

6          But it's our position, Judge, when applying those

7  factors to the 3553(a) factors, that they clearly favor a

8  guideline sentence.

9          Judge, this is not a stupid position.   The

10 defendant just said for the stupid position that he's in.

11 This is not a stupid position.   This is a sexual crime of

12 violence against a child.

13         He did more than simply view sexually explicit

14 photos of a 12-year-old girl, Judge.   He produced them.   He

15 did so using threats and bribes.   He did so to a child that

16 he knew that he had custody and care over, Judge.

17         The child trusted him, the child's family trusted

18 him.

19         There's some material in the defendant's sentencing

20 statement about how the defendant hasn't sexually abused a

21 child.   And effectively just now Mr. Miller said this is a

22 one time deal and I can't really be held accountable for a one

23 time sort of lack of judgment.

24         That's not the case, Judge.   This was not a single

25 episode.   There were multiple episodes involving multiple

1  victims. Judge, he physically touched children and he

2  produced sexually explicit photographs of those children.

3         Those videos, Judge, they graphically focus on a

4  12-year-old girl's vagina. And it's not a question, it's not

5  he's artistically looking at the wall and then just happened.

6  He get right there, his hand is in the video, Judge. He

7  manually spreads the young girl's legs so he can get a closer

8  view.

9         This is not a stupid position, Judge. This is

10  again a crime of violence against a child.

11         Judge, the Government's position is that he is, in

12  fact, a high-risk of harming a child based on what he's

13  already done and certainly what he's capable of doing.

14         Saying that he's a low risk, Judge, is like saying

15  that I'm short. I might be short compared to the Globe

16  Trotters, but saying that he's not a risk is sort of like

17  saying that a grizzly bear at a slumber party is a low risk.

18         Judge, he is very high-risk. He's shown that he's

19  sexually interested in minors. He's shown an interest not

20  only in sexually exploiting them, but in actually touching

21  them and he did so with more than one child, Judge.

22        **MR. KENNEDY:** Judge, I'm sorry to interrupt, but

23  I'm not sure where these allegations are coming from. I know

24  he made reference to some --

25        **THE COURT:** Well, Mr. Kennedy, Mr. Gestring didn't

1    interrupt you.   I'll give you a chance to reply if you wish.

2         Mr. Gestring.

3         **MR. GESTRING:** Thank you, Judge.   I would just

4    refer back to the presentence investigation report and the

5    facts brought out through Probation, I think paragraph 33

6    refers to sexual contact with more than one victim.

7         The victim in this case with respect to the

8    production of child pornography, but with respect to the

9    touching the other child's breasts, the buttocks, that's

10   contained in the presentence investigation report to which

11   there was no objection, Judge.

12         With respect to the Court's concerns about the

13   2G2.2 guidelines, I know that I've had this conversation with

14   the Court before in other cases, certainly with other facts,

15   Judge, and it's our position that the defendant's written

16   submission, which contains challenges to the 2G2.2 and what

17   we'll call the *Dorve* argument simply don't apply here.

18         Factually, Judge, the case is -- this case and the

19   *Dorve* case are completely different.  The *Dorve* case didn't

20   involve a real child, Judge.   It was an undercover.   The

21   *Dorve* case didn't involve physical contact.   Here it did.

22   And the *Dorve* case involved distribution as opposed to

23   production.

24         Moreover, Judge, the guidelines, the enhancements

25   that are traditionally challenged under the 2G2.2 analysis

with which this Court has previously expressed concerns are not relevant here. They don't apply here. These aren't the generic, as the Court thinks of them, the generic ones that apply to everybody. These are specific. Again, like The Mikado, the punishment fits the crime here, Judge.

These enhancements apply to this particular offense. He gets an enhancement because he had care and custody of the child. He gets an enhancement because he had sexual contact with the child.

These are not present in every single production case. These are specific to this case and, therefore, Judge, it's our position that that type of a challenge simply doesn't stand here.

I would like to address, Judge, the history and characteristics of the defendant, which simply cry out for a guideline sentence. Judge, in preparing the case for sentencing, reviewing the PSI, which is 36 pages, 22 pages of that are criminal history.

The criminal history category is VI based on an astonishing 48. Judge, it should be noted that this crime, the crime that the defendant is here in federal court for, was committed while he was on probation for previous state conduct, and that is significant and the Court should and must take notice of that under 3553(a), Judge, for sentencing.

Judge, I think with respect to his criminal

1  history, I do agree with Mr. Kennedy that the majority of his
2  conduct are misdemeanors and it's clear that he didn't -- has
3  not served a significant sentence of incarceration yet.

4         But that absolutely goes to the Court's
5  consideration of deterrence as a factor, Judge.    The only way
6  to stop him, the only way to deter him is with a significant
7  period of incarceration, Judge.

8         It is clear that none of his prior contacts over 22
9  pages has stopped him from committing new crimes because he
10 committed this child exploitation crime, this crime of
11 violence against a 12-year-old after he's had all those other
12 convictions, Judge.

13        Judge, with respect to his medical condition, I
14 would note that it didn't stop him from committing this crime.
15 It didn't stop him from sexually exploiting a 12-year-old or
16 her friend.    And it didn't stop him, more significantly,
17 Judge, from continuing his conduct while he was incarcerated.

18        As referenced in our filings, Judge, and I think
19 that previous hearings have made -- have made reference to,
20 the defendant has been involved in altercations while in
21 custody and those altercations were not where he was the
22 victim, but rather where he was the aggressor.

23        So his medical condition, while set forth in the
24 pleadings, is not sufficient in our belief to merit some type
25 of consideration for that, Judge.

1          Judge, I think when the Court considers the

2   material submitted by the defendant, specifically his letter,

3   I think he fails -- he minimizes his crime and his conduct and

4   that's something the Court should consider again under the

5   3553(a) factors.

6          Judge, bottom line here is that this defendant is

7   sexually dangerous.   This defendant is a threat, is a risk to

8   children.   He's already received a significant sentencing

9   break by virtue of him pleading to a 10 year mandatory instead

10  of a 15 year mandatory.

11         All the parties, Judge, agreed to the guidelines.

12  Agreed not to recommend a sentence outside of the guidelines.

13         It's our position, Judge, that this defendant, when

14  you apply those 3553(a) factors individually to him,

15  individually to his crime, individually to his history and to

16  his individual characteristics, that the Court should impose a

17  guideline sentence.

18         Thank you.

19         **THE COURT:** Any wish for rejoinder?

20         **MR. KENNEDY:** Judge, just very briefly.   The

21  allegations of multiple defendants (sic), the PSR makes

22  reference to some of the investigation that was done or

23  comments that were made by complainants and that's why they

24  weren't objected to because I don't have any doubt that the

25  comments were made.

1    There was never an indictment or charging
2  instrument in state court or in federal court where there was
3  more than one complainant.

4    There's never been a conviction of any type of
5  touching.   There was an allegation that said, I believe gave
6  them titty twisters and slapped them on the butt is what he
7  was referring to when he said physical contact, which again,
8  there's never been any type of state or federal substantiated
9  charges -- substantiate that allegation.

10    I just wanted to bring that to the Court's
11  attention.

12    **THE COURT:** The Court must consider many factors in
13  deciding a sentence that's sufficient, but not more than
14  necessary.

15    And I understand the Government's position that the
16  guidelines suggested are -- is the appropriate sentence.
17  It's the consistent position of the United States Attorney's
18  Office here that the guidelines are always the appropriate
19  sentence.   And that's fine, the Government can make whatever
20  recommendations they want.

21    But we are talking, Mr. Gestring, about a 30 year
22  sentence.   And I understand the office has policy requesting
23  these, but that, of course, is a most substantial sentence.
24  I can't think of any other crime -- murder on down -- that
25  requires that kind of sentence.

1    I'm not nay saying any of the things you said that
2  suggest that a significant sentence should apply, but it is 30
3  years to life, which is about as high as you can get.

4    And I'll admit, at least I concur with you, that at
5  least what Mr. Miller did was a terrible crime.   I guess
6  that's the question, whether it warrants a 30 year sentence.

7    I can't think of the right adjective, but I'm sure
8  you're familiar with the phrase *parens patrie*, that the state
9  often acts sort of in the parental role, especially of
10  children.   There are state courts that deal just with
11  children; family court that deals with children.

12    And in reviewing this, the -- I don't know how to
13  characterize it as irony, that in state court for what
14  Mr. Miller was alleged to have done here and pleaded guilty to
15  doing, he's allowed to plead guilty to a misdemeanor crime of
16  endangering the welfare of a child.

17    We have that at one end, and we have now the
18  federal prosecution at the other end in terms of severity.
19  Maybe someplace in the middle is more reasonable.   I'm never
20  going to criticize a fellow judge for a sentence that was
21  imposed by him or her, but it just struck me.

22    It's not the first time that state courts, whether
23  it's possession of child pornography or distribution,
24  especially in a case where minors were effected, that there be
25  that kind of a state sentence.   I guess we're not really here

1  to debate this, but it just struck me as I was preparing.

2        **MR. GESTRING:** It is a concern, I agree, Judge.

3  And you know what my position is going to be is that the state

4  sentences should be harsher for the actual contact.

5        **THE COURT:** I'm inclined to agree.  I mean, I do

6  agree.  But that's not my job to decide what the state did or

7  should have done.  My job is to decide what I should do based

8  on the defendant that's here.

9        There is a mandatory minimum 10 year sentence,

10  which for a man who is 53, is a significant sentence.

11  Mandatory minimum could have been greater.

12        Mr. Miller's prior record is remarkable in terms of

13  its length.  I don't know that I've seen one -- I counted 80

14  convictions.  A very high criminal history category that put

15  you in the criminal history category VI several times over.

16        By my count there were four felonies, which is not

17  something to brag about, four separate felonies.  None of

18  them involved crimes of violence.

19        There were approximately 55 petit larceny

20  convictions over a lengthy period of time.  Convictions,

21  based on my experience, is sort of consistent with a booster,

22  someone who steals to have money for a serious addiction

23  problem, but that's 55 convictions over the course of a

24  lifetime.

25        I mean, was nothing learned from any of those

1  convictions?  Also, there were at least four times when the

2  defendant did his probationary sentence, whether it was --

3  well, probation or parole was violated.    And this offense did

4  occur while Mr. Miller was on probation.

5          Sir, you know, you've had convictions for drugs,

6  for unauthorized operation of a vehicle, trespass, criminal

7  impersonation, criminal mischief, possession of forged

8  instrument, possession of stolen property.

9          According to the presentence report, you have no

10 significant employment history.    You've obviously had

11 significant and multiple drug and alcohol abuse problem.    You

12 now have serious medical issues perhaps related to some of

13 that, which gets us, of course, to the crime that you stand

14 here convicted of.

15          Whenever you deal with a minor, minors tend to make

16 serious mistakes of judgment and they rely on adults to do the

17 right thing.    And part of this crime is that you enticed

18 minors to do and to pose for the pictures that you took.

19          I view this as a crime of violence.    There was

20 evidence that you did touch them inappropriately.    So all of

21 this doesn't paint a very good picture for you, Mr. Miller.

22          I have felt that the sentencing guideline for child

23 pornography are too severe.    Some courts have described them

24 as excentric and fundamentally flawed.

25          I think to some extent, although these guidelines

1 are not related to possession of child pornography and the
2 enhancements, as pointed out by the Government, relate to your
3 specific conduct here, the whole area under 2G2.1, 2G2.2, all
4 those guidelines are significantly high.

5 Many courts have commented that they're not based
6 on empirical data. I think a 30 year sentence is excessive
7 under the circumstances here. Not to minimize what you did,
8 but nonetheless, challenge for the Court is -- not challenge,
9 but the directive to the Court is that the Court errs if it
10 assumes that a guideline sentence is reasonable. The Court
11 commits constitutional error by doing that.

12 Rather, the Court must examine all of the factors,
13 both good, bad and indifferent after considering the nature of
14 the offense, the history and characteristics of you, the need
15 to promote respect for law, provide just punishment and to
16 provide adequate deterrence, and also under certain
17 circumstances provide the defendant with the needed
18 vocational, medical or psychological care in the most
19 efficient manner.

20 Certainly the nature of the crime is most
21 reprehensible. The history and characteristics of you, as I
22 say, show a laundry list, lengthy list of over 40 years of
23 committing crimes, albeit misdemeanors. Nonetheless, for
24 each of those crimes there was a victim. Money was stolen,
25 probably never paid back.

1          That happens once, twice or three or four times,
2   but 55 petty larceny convictions; 80 convictions overall.

3          Mr. Gestring mentions the phrase and the concept of
4   deterrence.   I think that's a factor, too, not only to deter
5   you, but others that might think that this is something
6   appropriate to do, to film young girls and have them pose are
7   totally inappropriate.

8          I think in several respects you are a danger to the
9   community not only because of this conduct, but the lengthy
10  record that you have shows repeat, repeat conduct.   And I
11  think under 4A1.3 and related sections dealing with whether
12  the criminal history over or under represents the seriousness
13  of your criminal behavior, I think in this case, you know, the
14  likelihood of you offending again I think is pretty remarkably
15  high based on the history that is set forth here in multiple
16  pages of the presentence report concerning the 80 prior
17  convictions.

18         So I do intend to impose a sentence below the
19  sentencing guidelines.   I think the sentencing guidelines 30
20  years to life is a sentence that is more than necessary to
21  accomplish all the purposes required by the sentencing
22  statute.

23         Mr. Miller's age and the length of the sentence and
24  the fact there will be a lengthy term of supervised release,
25  which I think allows the Court and its officers to monitor

1  Mr. Miller.

2           So as you know, the Court must impose a sentence of

3  at least 120 months.   The sentence of the Court is for this

4  plea a sentence -- excuse me, plea and, therefore, conviction

5  is a term of 14 years.

6           You will get credit for whatever time he has in

7  custody and whatever time the Bureau of Prisons allows.

8           After considering all the factors, I think such a

9  sentence, a lengthy one, should be sufficient.

10           I place you on supervised release, Mr. Miller, for

11  a period of 10 years.   While on that release, you're not to

12  commit any new crimes -- state or federal.

13           You're not to possess a firearm.

14           You're not to submit -- excuse me, you are to

15  submit to random drug testing.   And if there continue to be

16  positive reports of drug abuse, you must engage in counseling

17  and treatment as directed.

18           You must cooperate in the collection of a DNA

19  sample.

20           While on supervised release you're to notify

21  Probation of any computers or automated services that you have

22  so that, if necessary, that can be monitored to make sure you

23  do not engage in any behavior that might constitute child

24  pornography.

25           You must enroll, attend and participate in mental

1  health intervention while in custody, but while on supervised

2  release treatment designed for the treatment of sexual

3  offenders, because I believe based on this conduct you qualify

4  as such.

5          You must also register with the state sex offender

6  registration agency as required by state and federal law, and

7  provide proof of your registration to the supervising

8  probation officer.

9          Failure to register could result in a new and

10  different crime.

11          You are not to have any deliberate contact with any

12  child under the age of 18 unless approved by your probation

13  officer and shall not loiter, hang out, or attend places where

14  children congregate: School yards, playgrounds, arcades, et

15  cetera.

16          You shall submit to a search of your residence, any

17  media that you have, computers to make sure you're complying

18  with the conditions imposed.

19          You must provide Probation with access to any

20  requested financial information as long as you're on

21  supervision.

22          The Court will impose a $100 mandatory special

23  assessment, which is due immediately.

24          The Court will recommend that Mr. Miller serve his

25  sentence in a suitable Bureau of Prisons medical facility, and

1  would recommend the Butner facility specifically.

2          Under the circumstances, the Court declines to

3  impose a fine in this case.

4          Any other conditions, Mr. Spogen, that I neglected

5  to --

6          **MR. SPOGEN:** No, Your Honor.

7          **MR. GESTRING:** Judge, we would ask that the

8  defendant have no contact with the victims in this case as

9  part of any release conditions.

10         **THE COURT:** So ordered.

11         **MR. GESTRING:** Thank you, Your Honor.

12         **THE COURT:** Complaint to dismiss perhaps?

13         **MR. GESTRING:** Judge, I think there's open counts of

14  an indictment, which the Government would move to dismiss.

15         Also, Judge, the forfeiture of the camera.

16         **THE COURT:** All right, the camera will be forfeited

17  as part of the J & C.

18         If there are open counts, either complaint or

19  indictment, they will be dismissed on the Government's motion.

20         In terms of appeal, defendants have very limited

21  rights to appeal.  In this case, under the plea agreement

22  Mr. Miller has given up or waived the right to appeal as long

23  as the Court's sentence is within the guideline range under

24  the plea agreement or lower, and this sentence meets that

25  test.

1          So, Mr. Miller, there does not appear to be any

2    ability to appeal, but I trust you'll consult with your client

3    and take what steps you believe are appropriate to perfect

4    whatever interest he might have.

5                **MR. KENNEDY:**  Yes, Judge.

6                **THE COURT:** That is the sentence of the Court.

7    Thank you.

8                **MR. GESTRING:** Thank you, Your Honor.

9                (**WHEREUPON**, the proceedings adjourned at 3:41 p.m.)

10                          *     *     *

11                  **CERTIFICATE OF TRANSCRIBER**

12

13          In accordance with 28, U.S.C., 753(b), I certify that

14    this is a true and correct record of proceedings from the

15    official electronic sound recording of the proceedings in the

16    United States District Court for the Western District of New

17    York before the Honorable David G. Larimer on December 17th,

18    2014.

19

20    S/ Christi A. Macri

21    Christi A. Macri, FAPR-CRR
      Official Court Reporter
22

23

24

25